**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AUGUSTIN VALENZUELA GALLARDO, *Petitioner*, <br><br> v. <br><br> LORETTA E. LYNCH, Attorney General, *Respondent*. | No. 12-72326 <br><br> Agency No. A056-010-094 <br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued November 21, 2014
Submitted January 5, 2015
San Francisco, California

Filed March 31, 2016

Before: Sidney R. Thomas, Chief Judge, Morgan Christen,
Circuit Judge, and J. Michael Seabright,* District Judge

Opinion by Judge Christen;
Dissent by Judge Seabright

---

* The Honorable J. Michael Seabright, District Judge for the U.S.
District Court for the District of Hawaii, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted Augustin Valenzuela Gallardo's petition for review of the Board of Immigration Appeals' precedential published opinion in *Matter of Valenzuela Gallardo*, 25 I. & N. Dec. 838 (BIA 2012), holding that a conviction for accessory to a felony under California Penal Code § 32 is an aggravated felony "offense relating to obstruction of justice" under Immigration and Nationality Act § 101(a)(43)(S).

The panel wrote that the BIA's revised interpretation of obstruction of justice to require only "the affirmative and intentional attempt, with specific intent, to interfere with the process of justice," departed from its prior construction of the statute by requiring no nexus to an ongoing investigation or proceeding. The panel held that the new construction raises grave doubts about whether § 101(a)(43)(S), so construed, is unconstitutionally vague. The panel remanded for the BIA to apply its previous interpretation in *In re Espinoza-Gonzalez*, 22 I. & N. Dec. 889 (BIA 1999) (en banc), or to offer a new construction.

Dissenting, Judge Seabright wrote that the majority mistakenly found that the BIA in *In re Espinoza-Gonzalez* had previously required a nexus to an ongoing investigation or proceeding, and that the BIA's opinion in *Matter of Valenzuela Gallardo* did not announce a new interpretation

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

removing the requirement. Judge Seabright wrote that rather *Matter of Valenzuela Gallardo* explicitly clarified language in *In re Espinoza-Gonzalez* in light of what the BIA considered to be this court's misreading of BIA precedent in *Hoang v. Holder*, 641 F.3d 1157 (9th Cir. 2011). Judge Seabright would also find that the absence of a requirement for an ongoing investigation or proceeding does not render the BIA's definition vague, much less create grave constitutional doubts.

## COUNSEL

Frank P. Sprouls (argued) and John E. Ricci, Law Office of Ricci & Sprouls, San Francisco, California, for Petitioner.

Rebecca Hoffberg Phillips (argued) and Imran Raza Zaidi, Trial Attorneys, and Ada Elsie Bosque, Senior Litigation Counsel, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for Respondent.

## OPINION

CHRISTEN, Circuit Judge:

Augustin Valenzuela Gallardo, a citizen of Mexico, pleaded guilty to violating California Penal Code § 32, accessory to a felony. An immigration judge (IJ) ordered him removed to Mexico, concluding that his conviction constituted an "offense relating to obstruction of justice" and therefore an aggravated felony under the Immigration and Nationality Act (INA) § 101(a)(43)(S). The Board of Immigration Appeals (BIA) dismissed Valenzuela Gallardo's

appeal. In its decision, it announced a new interpretation of "obstruction of justice" that requires only "the affirmative and intentional attempt, with specific intent, to interfere with the process of justice." Contrary to the prior construction, this interpretation of INA § 101(a)(43)(S) requires no nexus to an ongoing investigation or proceeding. Valenzuela Gallardo petitions for review, arguing that the agency's revised interpretation of the statute raises serious constitutional concerns about whether the statute is unconstitutionally vague. We agree and remand to the Board for application of the previous interpretation or formulation of a construction that does not raise grave constitutional doubts.

## BACKGROUND

### I.  Facts

Augustin Valenzuela Gallardo was admitted to the United States as a lawful permanent resident in 2002. In November 2007, police discovered him in a stolen vehicle with possession of methamphetamine, ecstacy, and a loaded firearm. Valenzuela Gallardo was arrested and charged with two counts of possession of a controlled substance (methamphetamine) in violation of California Health and Safety Code § 11378, one count of possessing methamphetamine while armed in violation of California Health and Safety Code § 11370.1, and one count of failing to comply with the terms of his probation in violation of California Penal Code § 1203. He agreed to plead guilty to an amended count of accessory to a felony in violation of California Penal Code § 32. All remaining charges were dismissed. Initially, Valenzuela Gallardo was placed on probation, but he subsequently violated the terms of his

probation and was sentenced to sixteen months' imprisonment.

## II. Proceedings

In June 2010, the Government placed Valenzuela Gallardo in removal proceedings. The Government argued that a conviction under California Penal Code § 32 constitutes an "offense relating to obstruction of justice," and therefore an aggravated felony under INA § 101(a)(43)(S).

Valenzuela Gallardo filed a motion to terminate removal proceedings in July 2010. He appeared before an immigration judge and contested removability on the grounds that his conviction was not an offense "relating to obstruction of justice" because "the federal 'Obstruction of Justice' grounds must relate to an extant judicial proceeding."

The IJ denied Valenzuela Gallardo's motion to terminate removal proceedings. The IJ reasoned that the BIA had previously held that the federal crime of accessory after the fact, 18 U.S.C. § 3, is an aggravated felony, that there was "no material difference" between § 3 and California Penal Code § 32, and that the BIA has not "limit[ed] the scope of the obstruction of justice aggravated felony to cases in which there is a pending judicial proceeding." The IJ thus concluded that a conviction under California Penal Code § 32 is an "offense relating to obstruction of justice," and ordered Valenzuela Gallardo removed to Mexico.

Valenzuela Gallardo filed an appeal but the BIA dismissed it. After the BIA denied Valenzuela Gallardo's motion to reconsider, he petitioned for review and requested

a stay of removal.  Our court dismissed that petition for lack of jurisdiction.

In May 2011, we issued an opinion in *Trung Thanh Hoang v. Holder*, a case that looked to two prior BIA decisions and held, under the agency's interpretation, that a crime constitutes an obstruction of justice crime "*when it interferes with an ongoing proceeding or investigation*." 641 F.3d 1157, 1164 (9th Cir. 2011) (some emphasis added).

In light of our opinion in *Hoang*, the BIA sua sponte reopened Valenzuela Gallardo's proceedings for further consideration of his removability.  In the opinion that followed, *In re Valenzuela Gallardo*, a three-judge panel of the BIA sought "to clarify [the BIA's] prior precedents on the scope of the phrase 'relating to obstruction of justice,'" and rejected *Hoang*'s holding.  25 I. & N. Dec. 838, 840, 842 (B.I.A. 2012).    The three-judge panel announced that "obstruction of justice" requires only:

> the affirmative and intentional attempt, with specific intent, to interfere with the process of justice—[this] demarcates the category of crimes constituting obstruction of justice. While many crimes fitting this definition will involve interference with an ongoing criminal investigation or trial, *we now clarify that the existence of such proceedings is not an essential element of "an offense relating to obstruction of justice*."

*Id.* at 841 (emphasis added) (citation omitted).  In light of this interpretation, the BIA concluded that Valenzuela Gallardo's conviction was an offense "relating to obstruction of justice."

*Id.* at 844. Because Valenzuela Gallardo was ultimately sentenced to more than one year of imprisonment for his offense, the BIA concluded that his conviction was for an aggravated felony. *Id.* It therefore dismissed Valenzuela Gallardo's reopened appeal. *Id.*

Valenzuela Gallardo petitions for review, challenging the BIA's most recent interpretation of INA § 101(a)(43)(S). We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D), and we hold that the BIA's new construction of "obstruction of justice" raises grave doubts about whether the statute, so construed, is unconstitutionally vague. Because we see no clear indication that Congress intended to delegate authority to the agency to push the constitutional boundary, we remand to the agency, as the agency requested, for consideration of a new construction or application of the interpretation it previously announced in *In re Espinoza-Gonzalez*, 22 I. & N. Dec. 889 (B.I.A. 1999) (en banc), and to which we deferred in *Hoang*, 641 F.3d at 1161.

## STANDARD OF REVIEW

We review legal questions de novo. *Perez-Enriquez v. Gonzales*, 463 F.3d 1007, 1009 (9th Cir. 2006). Where, as here, the BIA reviews an IJ's decision de novo, our review is limited to the BIA's decision. *Shah v. INS*, 220 F.3d 1062, 1067 (9th Cir. 2000).

## DISCUSSION

### I.  The BIA's most recent interpretation departs from its prior interpretations.

"Any alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii).  The INA does not separately define "aggravated felony."  Instead, it refers to a list of qualifying criminal offenses, which includes offenses "relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year."  INA § 101(a)(43)(S).

In 1997, a twelve-member en banc panel of the BIA ruled in *In re Batista-Hernandez* that the federal crime of accessory after the fact, 18 U.S.C. § 3, "clearly relates to obstruction of justice" and constitutes an aggravated felony under INA § 101(a)(43)(S). 21 I. & N. Dec. 955, 961 (B.I.A. 1997).  The Board explained:

> [T]he wording of 18 U.S.C. § 3 itself indicates its relation to obstruction of justice, for the statute criminalizes actions knowingly taken to "hinder or prevent (another's) apprehension, trial or punishment." . . . [T]he nature of being an accessory after the fact lies essentially in obstructing justice and preventing the arrest of the offender.

*Id.*

Two years later, a sixteen-member en banc panel of the BIA issued *Espinoza-Gonzalez* and concluded that misprision

of felony, 18 U.S.C. § 4, does not constitute obstruction of justice and is not an aggravated felony under INA § 101(a)(43)(S). 22 I. & N. Dec. 889, 897 (B.I.A. 1999). The BIA reasoned:

> We do not believe that every offense that, by its nature, would tend to "obstruct justice" is an offense that should properly be classified as "obstruction of justice." The United States Code delineates a circumscribed set of offenses that constitute "obstruction of justice," and although misprision of felony bears some resemblance to these offenses, it lacks the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice. . . . [W]here the obstruction of justice offenses are broadly stated, courts have interpreted them narrowly. To include all offenses that have a tendency to, or by their nature do, obstruct justice would cast the net too widely.

*Id.* at 893–94 (citation omitted). *Espinoza-Gonzalez* distinguished misprision of felony from accessory after the fact, which had been at issue in *Batista-Hernandez*:

> The definition of the federal crime of accessory after the fact in 18 U.S.C. § 3 requires an affirmative action knowingly undertaken "in order to hinder or prevent (another's) apprehension, trial or punishment." Although misprision of a felony has as an element the affirmative

concealment of the felony, there is, unlike § 3, nothing in § 4 that references the specific purpose for which the concealment must be undertaken.     The specific purpose of hindering the process of justice brings the federal "accessory after the fact" crime within the general ambit of offenses that fall under the "obstruction of justice" designation.

Furthermore, concealment of a crime is qualitatively different from an affirmative action to hinder or prevent another's apprehension, trial, or punishment.  *It is a lesser offense to conceal a crime where there is no investigation or proceeding*, or even an intent to hinder the process of justice, and where the defendant need not be involved in the commission of the crime.     Further, accessory after the fact has been defined as obstructing justice.  *United States v. Barlow*, [470 F.2d 1245,] 1252–53 [(D.C. Cir. 1972)].

*Id.* at 894–95 (emphasis added).

Although the phrase "obstruction of justice" is not statutorily defined, the BIA observed that Title 18, Chapter 73 of the United States Code lists a number of offenses under the heading "Obstruction of Justice" and provides "substantial guidance, consistent with judicial pronouncements on the subject, as to the contours of the 'obstruction of justice' category of offenses." *Id.* at 893, 894 n.4; *see also* 18 U.S.C. §§ 1501–1521.  The Board noted:

> The intent of the two broadest provisions, § 1503 (prohibiting persons from influencing or injuring an officer or juror generally) and § 1510 (prohibiting obstruction of criminal investigations), is to protect individuals assisting *in a federal investigation or judicial proceeding and to prevent a miscarriage of justice in any case pending in a federal court.*

*Id.* at 892 (emphasis added) (citation omitted). The BIA also found guidance in the Supreme Court's decision in *United States v. Aguilar*, which narrowly construed § 1503's "catchall phrase"[1] to require action taken with an intent to influence judicial or grand jury proceedings. 515 U.S. 593, 598–99 (1995) (holding that "[t]he action taken by the accused must be with an intent to influence judicial or grand jury proceedings").

Our court has deferred to the agency interpretation announced in *Espinoza-Gonzalez* on three occasions. *See Trung Thanh Hoang v. Holder*, 641 F.3d 1157, 1161 (9th Cir. 2011); *Salazar-Luviano v. Mukasey*, 551 F.3d 857, 860 (9th Cir. 2008); *Renteria-Morales v. Mukasey*, 551 F.3d 1076, 1086–87 (9th Cir. 2008). In the proceedings below, a three-judge panel of the BIA revisited its en banc court's interpretation of obstruction of justice and clarified that a nexus to an "ongoing criminal investigation or trial . . . is not an essential element of 'an offense related to obstruction of

---

[1] The catchall phrase in § 1503 provides that obstruction of justice includes a person who "corruptly, or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503(a).

justice.'"  *In re Valenzuela Gallardo*, 25 I. & N. Dec. 838, 841 (B.I.A. 2012).  Applying this broader definition, the BIA dismissed Valenzuela Gallardo's appeal.[2]  *Id.* at 844.

## II. The constitutional avoidance doctrine applies in the *Chevron* context.

We apply the *Chevron* framework where, as here, there is "binding agency precedent on-point" in the form of a published BIA opinion.  *See Renteria-Morales*, 551 F.3d at 1081 (quoting *Kharana v. Gonzales*, 487 F.3d 1280, 1283 n.4 (9th Cir. 2007)).  Under the familiar *Chevron* framework, we first ask "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).  If the statute "unambiguously bars" the agency's interpretation, that is the end of the analysis, *see Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 471 (2001), "for the court, as well as the agency, must give effect to the unambiguously expressed

---

[2] In its briefing and at oral argument, the government made clear that the operative definition of "obstruction of justice" is the one the BIA announced in *Valenzuela Gallardo*, so that is the one we review.  The dissent would have us review a construction that is narrower and more concrete than the one the BIA advocates.  Dissent at 44.  The dissent also quarrels with our characterization of the BIA's interpretation of INA § 101(a)(43)(S) as "new," *see* Dissent, Section I, but the government did not dispute that this is a new interpretation.  More to the point, whether the BIA's definition is new, newly clarified, or merely "a change from this Circuit's *interpretation* of BIA precedent," Dissent at 33, the BIA in *Valenzuela Gallardo* "invoke[d] . . . *Brand X*" and set out the operative construction of "obstruction of justice." *Valenzuela Gallardo*, 25 I. & N. Dec. at 840.  "Under *Brand X*," it is our duty to review "the BIA's most recent interpretation." *Anaya-Ortiz v. Holder*, 594 F.3d 673, 678 (9th Cir. 2010); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).

intent of Congress," *Chevron*, 467 U.S. at 842–43.  To determine whether the statute unambiguously bars an agency interpretation we "apply[] the normal 'tools of statutory construction.'" *INS v. St. Cyr*, 533 U.S. 289, 320 n.45 (2001) (quoting *Chevron*, 467 U.S. at 843 n.9).  If, after application of these tools, an immigration statute remains "silent or ambiguous with respect to the specific issue before the agency," we proceed to *Chevron* Step Two and determine whether "the BIA's interpretation is 'based on a permissible construction of the statute.'" *Renteria-Morales*, 551 F.3d at 1081 (quoting *Parrilla v. Gonzales*, 414 F.3d 1038, 1041 (9th Cir. 2005)).  If it is, the court must defer to the BIA's reasonable statutory interpretation.

We have deferred to the BIA's interpretation of "obstruction of justice" in at least three cases because the INA did not unambiguously bar the interpretation and the interpretation was reasonable.[3]  *Hoang*, 641 F.3d at 1160–61; *Salazar-Luviano*, 551 F.3d at 860; *Renteria-Morales*,

---

[3] Valenzuela Gallardo argues that the BIA cannot depart from our court's decision in *Hoang* or its own prior interpretation in *Espinoza-Gonzalez*.  We disagree.  In *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, the Supreme Court expressly instructed that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." 545 U.S. 967, 982 (2005).  Because our prior interpretations of § 101(a)(43)(S) did not follow unambiguously from the statute, *see Hoang*, 641 F.3d at 1161, the BIA was free to interpret the phrase "obstruction of justice" in a manner inconsistent with those precedents.  Therefore, "[u]nder *Brand X*, we must apply *Chevron* deference to the BIA's most recent interpretation" if Congress has not directly spoken to the issue and the BIA's interpretation is reasonable.  *Anaya-Ortiz v. Holder*, 594 F.3d 673, 678 (9th Cir. 2010).

551 F.3d at 1086–87; *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) ("It is clear that principles of *Chevron* deference are applicable to [the INA's] statutory scheme."). However, our prior deference to the BIA's interpretation of "obstruction of justice" does not end the *Chevron* Step One inquiry. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 446–48 (1987) (concluding that the BIA's interpretation of "well-founded fear," an otherwise ambiguous term, was inconsistent with the INA at *Chevron* Step One). Rather, before turning to *Chevron*'s Step Two, we must ask whether Congress intended to permit the agency interpretation. *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000). To answer this question we are aided by traditional tools of statutory construction. *See id.* at 132–33; *MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 225–26 (1994). If a court, employing these tools, "ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron*, 467 U.S. at 843 n.9.

Particularly relevant here are the doctrines of constitutional avoidance and constitutional narrowing. *DeBartolo Corp. v. Fl. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). The dissent objects to our use of constitutional narrowing to interpret the INA, arguing that we should stick with "the familiar *Chevron* standard." Dissent at 34. But *Chevron* itself instructs that "employing traditional tools of statutory construction" is a straightforward application of *Chevron*. *Chevron*, 467 U.S. at 843 n.9. Indeed, the canon of constitutional avoidance "is highly relevant at *Chevron* step one." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 504 (9th Cir. 2007) (en banc) (Thomas, J., dissenting); *id.* at 492–93 (majority opinion) (holding that constitutional narrowing is inapplicable at

*Chevron* Step Two).[4]   Because we "assum[e] that Congress does not casually authorize administrative agencies to interpret a statute to push the limit of congressional authority," if an agency's statutory interpretation "invokes the outer limits of Congress' power, we expect a clear indication that Congress intended that result." *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs (SWANCC)*, 531 U.S. 159, 172–73 (2001).   Absent clear indication, we invoke constitutional narrowing at Step One to avoid the constitutional question and foreclose the constitutionally

---

[4] The dissent criticizes our mode of *Chevron* analysis and the use of the doctrine of constitutional avoidance at *Chevron* Step One.  *See* Dissent at 47–48 (quoting *Olmos v. Holder*, 780 F.3d 1313, 1320–21 (10th Cir. 2015)).   The dissent is incorrect, however, that we only ask whether Congress intended an implicit delegation in "extraordinary cases."  *See Chevron*, 467 U.S. at 843–44 (directing courts to determine whether Congress explicitly *or implicitly* delegated authority to an agency); Dissent at 49–50.  Rather, when read in context, the cases invoked by the dissent stand for the proposition that we should hesitate to find an implicit delegation in "extraordinary cases" of "*economic and political significance.*"  *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (emphasis added) (concluding that the potential implicit delegation at issue was of such "deep economic and political significance" that "had Congress wished to assign that question to an agency, it surely would have done so expressly"); *Brown & Williamson*, 529 U.S. at 159–60 (concluding that "Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion"). Here, where the potential implicit delegation is not one of deep "economic and political significance," we must turn to other tools to assess Congressional intent, such as the constitutional avoidance doctrine.

Furthermore, even the dissent acknowledges that the Supreme Court applies the constitutional avoidance doctrine in the *Chevron* context, Dissent at 63–65; *DeBartolo*, 485 U.S. at 575–76, and our en banc authority says that the doctrine is inapplicable at Step Two, *Morales-Izquierdo*, 486 F.3d at 492–93.  That leaves Step One, lest we abdicate our role.

questionable interpretation. *Williams v. Babbit*, 115 F.3d 657, 662–63 (9th Cir. 1997); *see also DeBartolo*, 485 U.S. at 588 (construing the NLRA to preclude an interpretation raising grave constitutional concerns rather than deferring to the agency interpretation).

The use of constitutional narrowing in the *Chevron* context is not a novel concept. The Supreme Court and our court have refused to accord deference to agency interpretations that raise grave constitutional doubts where other permissible and less troubling interpretations exist. In *DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568 (1988), the Supreme Court announced the applicability of the constitutional avoidance doctrine in the *Chevron* context. *DeBartolo* concerned the National Labor Relations Board's (NLRB) interpretation of "coercion" as used in the National Labor Relations Act (NLRA). The NLRB decided that a labor union's peaceful handbilling of consumers was prohibited if it encouraged consumers to boycott stores that failed to pay fair wages. *Id.* at 573. The Court held that though the interpretation would otherwise be entitled to *Chevron* deference, the NLRB's interpretation posed serious questions of validity under the First Amendment. *Id.* at 574–76. The Court invoked the constitutional avoidance doctrine: "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Id.* at 575 (citing *NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 499–501 (1979)). The *DeBartolo* Court observed:

> "[T]he elementary rule is that every reasonable construction must be resorted to,

in order to save a statute from unconstitutionality." This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it.

*Id.* (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)).

The Court ultimately determined that a less constitutionally suspect interpretation was not foreclosed by the statutory language or legislative history. It therefore declined to defer to the NLRB's interpretation because a less problematic construction "makes unnecessary passing on the serious constitutional questions that would be raised by the Board's understanding of the statute." *Id.* at 588.

In *Rust v. Sullivan*, 500 U.S. 173 (1991), the Supreme Court further refined its application of the constitutional avoidance doctrine to agency interpretation of ambiguous statutes. The *Rust* Court reviewed facial challenges to regulations promulgated by the Secretary of Health and Human Services under Title X of the Public Health Service Act. *Id.* at 181. Because the regulations provided that funds under the Act could not be used to pay for abortions, directly or indirectly, the challengers claimed the regulation violated the First and Fifth Amendments. *Id.* The Court observed that the principle espoused in *DeBartolo* "is based at least in part on the fact that a decision to declare an Act of Congress

unconstitutional 'is the gravest and most delicate duty that this Court is called on to perform,'" *id.* at 190–91 (quoting *Blodgett v. Holden*, 275 U.S. 142, 148 (1927)), and concluded that a "statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *Id.* (quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916)).  Applying this rule, the Court held that the public health regulations at issue in *Rust* did not "raise the sort of 'grave and doubtful constitutional questions' that would lead [it] to assume Congress did not intend to authorize their issuance," and declined to invalidate the regulations.  *Id.* (citation omitted).

Our court considered *DeBartolo* and *Rust* in *Williams v. Babbitt*, 115 F.3d 657 (9th Cir. 1997).  There, we synthesized and applied the *DeBartolo-Rust* constitutional avoidance standard for the first time.  *Id.* at 661–63.  The *Babbitt* court reviewed an interpretation by the Interior Board of Indian Appeals (IBIA) of the Reindeer Industry Act as it pertained to reindeer sales in Alaska.  *Id.* at 659. The IBIA interpreted the Act to prohibit non-Natives from joining the Alaska reindeer industry.  *Id.*  On appeal, non-Native appellants claimed that the IBIA interpretation violated the constitutional guarantee of equal protection.  *Id.* at 660.

Our analysis in *Babbitt* began by observing that the IBIA interpretation was entitled to *Chevron* deference "absent other considerations."  *Id.* at 660 n.3.  We then went on to analyze one of those "other considerations," namely, whether the interpretation raised equal protection concerns.  *Id.* at 661. We concluded: "*Rust* and *DeBartolo*, read together, require courts to scrutinize constitutional objections to a particular agency interpretation skeptically.   Only if the agency's proffered interpretation raises *serious* constitutional concerns

may a court refuse to defer under *Chevron*." *Id.* at 662. Because we concluded that the IBIA's interpretation of the Reindeer Act raised serious constitutional concerns, and because "a less constitutionally troubling construction [was] readily available," we interpreted the Act as not precluding non-Natives from owning and importing reindeer in Alaska. *Id.* at 666.

When a court practices what *Babbitt* termed "constitutional narrowing," it leaves agencies "free to adopt any interpretation that doesn't come perilously close to the constitutional boundary." *Id.* at 662–63. Constitutional narrowing recognizes that the decision to foreclose a constitutionally troubling interpretation is a legal decision, not a policy decision, and should be addressed by the courts, not the agency. *Id.* at 662. Agencies specialize in making the policy decisions necessary to apply generalized statutory provisions to the complexities of everyday life. *FDA v. Brown & Williamson*, 529 U.S. 120, 132–33 (2000). Judges specialize in "say[ing] what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). "[W]hen a court construes a statute so as to avoid a difficult constitutional question, it is not making a policy choice," it is making a legal choice. *Babbit*, 115 F.3d at 662. The policy choice remains with the agency, which is "free to adopt any interpretation that doesn't come perilously close to the constitutional boundary." *Id.* at 663.

These authorities establish that where an agency's interpretation of a statute raises grave constitutional concerns, and where Congress has not clearly indicated it intends a constitutionally suspect interpretation, we can assume Congress did not delegate authority for the interpretation and

deem it foreclosed by the statute.  With this framework in mind, we turn to the agency interpretation before us.

## III.    The BIA's new interpretation raises grave constitutional doubts.

The BIA has been express in stating that it does "not believe that every offense that, by its nature, would tend to 'obstruct justice' is an offense that should properly be classified as 'obstruction of justice.'"  *In re Espinoza-Gonzalez*, 22 I. & N. Dec. 889, 893–94 (B.I.A. 1999).  And the BIA has given some indication of where it draws that line: 18 U.S.C. § 3 (accessory after the fact) is an obstruction of justice crime, whereas 18 U.S.C. § 4 (misprision of felony) is not.  *Id.* at 892.  According to the BIA, the distinction between these crimes—and the "critical element" of obstruction of justice crimes—is the "affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice," regardless of the existence of an ongoing investigation or proceeding.  *In re Valenzuela Gallardo*, 25 I. & N. Dec. 838, 842 (B.I.A. 2012).  In other words, though the BIA has said that not every crime that tends to obstruct justice qualifies as an obstruction of justice crime, and the critical factor is the interference with the process of justice—which does not require an ongoing investigation or proceeding—the BIA has not given an indication of what it does include in "the process of justice," or where that process begins and ends.  Valenzuela Gallardo argues that this new interpretation raises grave doubts about whether INA § 101(a)(43)(S) is unconstitutionally vague.  We agree.

"The Fifth Amendment provides that '[n]o person shall . . . be deprived of life, liberty, or property, without due

process of law.'" *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) (alterations in original) (quoting U.S. Const. amend. V). The "[v]agueness doctrine is an outgrowth . . . of [that clause]. A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). The Supreme Court has advised:

> What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; *but rather the indeterminacy of precisely what that fact is.* Thus, we have struck down statutes that tied criminal culpability to . . . wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.

*Id.* at 306 (emphasis added). "The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Johnson*, 135 S. Ct. at 2556–57 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

Recently, the Supreme Court held that the residual clause of the Armed Career Criminal Act of 1984 is unconstitutionally vague because it "denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 2257. The residual clause states that a "violent felony" is

"any crime punishable by imprisonment for a term exceeding one year . . . that . . . involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B).  The Court held that two features of the clause render it unconstitutionally vague.  First, the clause "leaves grave uncertainty about how to estimate the risk posed by a crime.  It ties the judicial assessment of risk to a judicially imagined ordinary case of a crime, not to real-world facts or statutory elements."  *Johnson*, 135 S. Ct. at 2557 (internal quotation marks omitted).   Second, the clause creates "uncertainty about how much risk it takes for a crime to qualify as a violent felony.  It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." *Id.* at 2558.  The Supreme Court concluded: "By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates."  *Id.*

The residual clause left grave uncertainty about the amount of risk it takes for a crime to qualify as a violent felony.  The BIA's new construction leaves grave uncertainty about the plethora of steps before and after an "ongoing criminal investigation or trial" that comprise "the process of justice," and, hence, uncertainty about which crimes constitute "obstruction of justice."  *See In re Valenzuela Gallardo*, 25 I. & N. Dec. 838, 841 (B.I.A. 2012).  We can glean no definition of "the process of justice" from the BIA's case law.  *See, e.g.*, *id.* at 840–41 (distinguishing 18 U.S.C. § 4 (misprision of felony) from 18 U.S.C. § 3 (accessory after

the fact) based on § 3's specific intent requirement).[5] The phrase "obstruction of justice" has no statutory definition or settled legal meaning. *See* 8 U.S.C. § 1101 (INA definitions section with no definition of "process of justice"); *Black's Law Dictionary* 1329 (9th ed. 2009) (providing no definition of "process of justice"). When the BIA clarified that the "process of justice" does not necessarily involve an ongoing investigation or proceeding, it eliminated the narrowing principal *Hoang* had gleaned from earlier BIA case law. *See Trung Thanh Hoang v. Holder*, 641 F.3d 1157, 1160–61, 1164 (9th Cir. 2011). We do not hold, as the dissent suggests, that "ongoing proceedings" is the only permissible anchor for the "process of justice." But after *Valenzuela Gallardo*, arguably everything that happens after someone commits a crime could be considered to be part of the "process of justice." We cannot reconcile this expansive interpretation with the BIA en banc court's declaration that it does "not believe that every offense that, by its nature, would tend to 'obstruct justice' is an offense that should properly be classified as 'obstruction of justice.'" *In re Espinoza-Gonzalez*, 22 I. & N. Dec. 889, 893–94 (B.I.A. 1999). As the Supreme Court noted in *Williams*, amorphous terms "without statutory definitions, narrowing context, or settled legal

---

[5] At oral argument, the government would only go so far as to say that interference with the "process of justice" *includes* interfering with another person's arrest or apprehension. This only confirms that a conviction under California's accessory after the fact statute is a crime "relating to the obstruction of justice." *See* Cal. Penal Code § 32 ("Every person who, after a felony has been committed . . . aids a principal in such felony, with the intent that such principal may avoid escape from arrest, trial, conviction or punishment . . . is an accessory to such felony."). The government's response does not provide a limiting principal or tell us what crimes—other than § 32—fall within and outside the nebulous "process of justice."

meanings" raise vagueness concerns. *See United States v. Williams*, 553 U.S. 285, 306 (2008).

Absent some indication of the contours of "process of justice," an unpredictable variety of specific intent crimes could fall within it, leaving us unable to determine what crimes make a criminal defendant deportable under INA § 101(a)(43)(S) and what crimes do not. *See City of Chicago v. Morales*, 527 U.S. 41, 57 (1999) (plurality opinion) (invalidating as unconstitutionally vague Chicago's anti-loitering statute in part because it did not give potential violators notice of "what loitering is covered by the ordinance and what is not"). More importantly, because the BIA's new interpretation invites arbitrary enforcement, defense lawyers will be unable to accurately advise their clients about the immigration-related consequences of a conviction or plea agreement. *See Padilla v. Kentucky*, 559 U.S. 356, 360 (2010) (holding that defense "counsel had an obligation to advise [defendant] that the offense to which he was pleading guilty would result in his removal from this country").

What we do know is that, in the INA, Congress identified three types of obstruction-related offenses that qualify as "aggravated felonies" and trigger deportation: "[1] an offense relating to obstruction of justice, [2] perjury or subordination of perjury, [3] or bribery of a witness." INA § 101(a)(43)(S). Perjury and bribery of a witness are clearly tied to proceedings, and this informs our understanding of Congress's intended interpretation of "obstruction of justice." *See Microsoft Corp. v. C.I.R.*, 311 F.3d 1178, 1184 (9th Cir. 2002) ("The doctrine of *noscitur a sociis* counsels that words should be understood by the company they keep."). Shedding more light on what Congress intended is the list of obstruction of justice crimes Congress included in Title 18,

Chapter 73, on which the BIA based its interpretation of INA § 101(a)(43)(S). *See Espinoza-Gonzalez*, 22 I. & N. Dec. at 892. The difficulty presented by the BIA's new interpretation of "obstruction of justice" can be seen by comparing it to the Chapter 73 obstruction of justice crimes. As the BIA has recognized, almost all of these "obstruction of justice offenses . . . have as an element interference with the proceedings of a tribunal." *Id.* at 892. The few that do not require interference with a tribunal or investigation have as an element the intent to interfere with a specific act associated with a tribunal or investigation. *See, e.g.*, 18 U.S.C. § 1512(b)(3) (prohibition on tampering with a witness with the intent to hinder or prevent "communication to a law enforcement officer" regarding a federal offense); 18 U.S.C. § 1512(d)(2) (prohibition on harassing someone with the intent to prevent that person from "reporting [a federal crime] to a law enforcement officer or judge"); 18 U.S.C. § 1519 (prohibition on falsifying or destroying a record "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter" within the jurisdiction of the United States).[6]

The Government and dissent assure us that the BIA's new interpretation is sufficiently limited because it still requires

---

[6] The dissent discusses examples of crimes that clearly fall within the BIA's new interpretation, but we are concerned with the outer edges of the definition, not its core. The fact that the BIA's interpretation encompasses conduct Congress undoubtedly intended to include in "obstruction of justice," *see* 18 U.S.C. §§ 1501–1521, does not resolve the due process concern presented by the phrase "the process of justice." In *Johnson*, the Supreme Court reaffirmed that its case law "squarely contradict[s] the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." 135 S. Ct. at 2561.

specific intent. But this does little to answer the question central to our constitutional concerns—specific intent to do what? *See United States v. Williams*, 553 U.S. 285, 306 (2008) ("What renders a statute vague, however, is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather *the indeterminancy of precisely what that fact is*." (emphasis added)). Though it ostensibly defines the required mens rea—intent to interfere with the "process of justice"—it provides little instruction on the equally important actus reus. *Cf. Leal v. Holder*, 771 F.3d 1140, 1146 (9th Cir. 2014) ("[B]oth the actus reus and the mens rea must be considered in concert to determine whether the behavior they describe is sufficiently culpable." (citation omitted)); *Trung Thanh Hoang v. Holder*, 641 F.3d 1157, 1161 (9th Cir. 2011) ("*Espinoza-Gonzalez* 'articulated both an actus reus and mens rea element of the generic definition of [obstruction of justice] crimes for purposes of §1101(a)(43)(S).'" (alteration in original) (citation omitted)). Specific intent does little to accord fair notice when there is no indication of what it is that must be interfered with in order to "obstruct justice."

The Government also argues that the one-year sentence requirement offers a limitation on its interpretation. *See* INA § 101(a)(43)(S). But as with the specific intent element, the one-year sentence requirement does not reduce the indeterminacy of the type of conduct that qualifies as an aggravated felony. Indeed, in the context of accessory after the fact, the one-year sentence actually reflects the severity of an underlying crime committed by another person. The residual clause the Supreme Court examined in *Johnson* also required a one-year sentence. 135 S. Ct. at 2555. There, the sentence at least reflected the crime actually committed by the defendant at issue, *see* 18 U.S.C. § 924(e)(2)(B) ("[T]he

term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year."), but even so, the length-of-sentence limitation was insufficient to salvage the clause from its vagueness. *See Johnson*, 135 S. Ct. at 2563. We see no reason for concluding that the same one-year sentence requirement is sufficient to dispel the serious constitutional doubts presented here.

The dissent reads our opinion as imposing a "temporal nexus requirement" on the BIA's definition of "crimes relating to obstruction of justice." Dissent at 36. It doesn't. We do not hold that the BIA's definition of "obstruction of justice" must be tied to an ongoing proceeding; rather, we hold that the BIA's new interpretation of obstruction of justice raises grave constitutional concerns because it uses an amorphous phrase—"process of justice"—without telling us what that phrase means. It is difficult to imagine a specific intent crime that could not be swept into the BIA's expanded definition. The problem is the absence of *any* narrowing context—not necessarily the specific narrowing context of a tie to "ongoing proceedings."[7]   The BIA is free to define

---

[7] The dissent argues that "the BIA's definition is not missing the required nexus" to "a foreseeable or contemplated proceeding," Dissent at 52–53, and suggests that the BIA's interpretation of "obstruction of justice" requires a nexus to an ongoing or contemplated proceeding or investigation. But this is not what the BIA said in *Valenzuela Gallardo* or in oral argument before our court. In *Valenzuela Gallardo*, the BIA articulated that "the existence of such proceedings is not an essential element of 'an offense relating to obstruction of justice.'" 25 I. & N. Dec. at 841. If, as the dissent suggests, the BIA intends interference with the "process of justice" to mean interference with an ongoing *or foreseeable or contemplated* investigation or proceeding, it can clarify this on remand.

obstruction of justice as it sees fit on remand, as long as the definition is not unworkably vague.**[8]**

## IV.   Under the constitutional avoidance doctrine, we do not defer to the BIA's new construction.

Having determined that the BIA's new interpretation creates serious constitutional doubts, we must determine whether Congress "[made] it clear that it chooses the constitutionally doubtful interpretation." *Williams v. Babbitt*,

---

**[8]** The dissent argues that we create or exacerbate a circuit split with the Second, Third, Fifth, and Eighth Circuits. *See* Dissent at 44–45 & n.6. We don't.   Our sister circuits do not address whether the BIA's interpretation of "obstruction of justice" is unconstitutionally vague in any of the cases cited by the dissent. *See Armenta-Lagunas v. Holder*, 724 F.3d 1019, 1020–21 (8th Cir. 2013); *Higgins v. Holder*, 677 F.3d 97, 98–99 (2d Cir. 2012) (per curiam); *Denis v. Attorney General*, 633 F.3d 201, 207–09 (3d Cir. 2011).   "Nexus to an ongoing proceeding" was not at issue in *Armenta-Lagunas* or *Higgins* because the state statutes in those cases plainly required such a nexus. *See Armenta-Lagunas*, 724 F.3d at 1023; *Higgins*, 677 F.3d at 105 (noting that the Connecticut statute "require[s] a nexus to an official proceeding").   In *United States v. Gamboa-Garcia*, 620 F.3d 546 (5th Cir. 2010)—a case decided before *Valenzuela Gallardo* and *Descamps v. United States*, 133 S. Ct. 2276 (2013)—the Fifth Circuit relied on the alien's conduct, not the elements of her crime of conviction, to decide that the crime "relat[ed] to obstruction of justice." *Gamboa-Garcia*, 620 F.3d at 549–50.   The conduct was extreme:   Gamboa-Garcia witnessed a murder, drove and cleaned up the getaway car, financed the murderer's escape, and lied to police. *Id.* at 547.   The dissent also overlooks that our circuit has long disagreed with the Third Circuit's interpretation of INA § 101(a)(43)(S). In fact, our circuits' views depart from the get-go because the Third Circuit does not even consider the undefined term "obstruction of justice" to be ambiguous. *See Denis*, 633 F.3d at 207–09, 211 & n.12 ("[W]e again depart from the view adopted by the Ninth and Fifth Circuit Courts of Appeals . . . .").   Contrary to the dissent's assertion, our decision does not create or exacerbate a circuit split.

115 F.3d 657, 663 (9th Cir. 1997). We see no such indication. All of Congress's express examples of obstruction of justice contemplate ongoing proceedings or investigations or are otherwise sufficiently specific to provide notice of what conduct is prohibited. *See* 18 U.S.C. §§ 1501–1502, 1504–1521; *supra* Section III. And although the catchall provision in 18 U.S.C. § 1503 pertains to anyone who "influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice," courts have universally construed this broad language to require an ongoing proceeding:

> Recent decisions of Courts of Appeals have likewise tended to place metes and bounds on the very broad language of the catchall provision. The action taken by the accused must be *with an intent to influence judicial or grand jury proceedings*; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority. *United States v. Brown*, 688 F.2d 596, 598 (9th Cir. 1982) (citing cases). Some courts have phrased this showing as a "nexus" requirement—that the act must have a relationship in time, causation, or logic with the judicial proceedings. *United States v. Wood*, 6 F.3d 692, 696 (10th Cir. 1993); *United States v. Walasek*, 527 F.2d 676, 679 & n.12 (3d Cir. 1975). In other words, the endeavor must have the "'natural and probable effect'" of interfering with the due administration of justice. *Wood*, 6 F.3d at 695; *United States v. Thomas*, 916 F.2d 647,

> 651 (11th Cir. 1990); *Walasek*, 527 F.2d at
> 679. . . . But . . . if the defendant lacks
> knowledge that his actions *are likely to affect
> the judicial proceeding, he lacks the requisite
> intent to obstruct.*

*United States v. Aguilar*, 515 U.S. 593, 599 (1995) (emphasis added); *see also In re Espinoza-Gonzalez*, 22 I. & N. Dec. 889, 892 (B.I.A. 1999) (noting that the Supreme Court has "narrowly" construed the catchall provision).[9]  As the BIA itself observed in *Espinoza-Gonzalez*, even the broadest obstruction of justice provisions intend "to protect individuals assisting in a federal investigation or judicial proceeding and to prevent a miscarriage of justice in any case pending in a federal court." 22 I. & N. Dec. at 892.  We see no indication Congress intended that "obstruction of justice" be interpreted as broadly as the BIA has done here.

---

[9] Judicial interpretations of § 1503 are particularly relevant here because the BIA's construction pertains to a criminal statute, where federal courts—not administrative agencies—have expertise.  *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Although here we deal with [18 U.S.C.] § 16 in the deportation context, § 16 is a criminal statute, and it has both criminal and noncriminal applications.  Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *Mugalli v. Ashcroft*, 258 F.3d 52, 56 (2d Cir. 2001) ("But the BIA's conclusion that a conviction under 18 U.S.C. § 513(a) necessarily constituted an 'attempt' as the BIA had defined it depended on an analysis of a federal criminal statute and *was thus beyond the BIA's administrative responsibility and expertise.  That conclusion was therefore entitled to no deference from us.*" (emphasis added)).  Because the BIA has expertise in interpreting the INA, but not the federal criminal code, there is less reason to defer.  *See, e.g.*, *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010) (striking down BIA interpretation of aggravated felony provision without mentioning *Chevron* deference).

Further, and contrary to the dissent's argument, the fact that Congress defined "aggravated felony" to include not just obstruction of justice offenses but offenses "*relating to* obstruction of justice" does not indicate its intent that the BIA "push the constitutional envelope." *Williams v. Babbit*, 115 F.3d 657, 662 (9th Cir. 1997). The use of the modifier "relating to" broadens the INA's intended reach, but it is not an explicit indication that Congress intended that the BIA approach the constitutional boundary, nor is it an excuse for abdicating our role. *See Mellouli v. Lynch*, 135 S. Ct. 1980, 1990 (2015) (striking down the BIA's interpretation of an aggravated felony "relating to a controlled substance," INA § 237(a)(2)(B)(I), as inconsistent with congressional intent). If Congress wishes to authorize such a result, "it must do so explicitly." *Babbitt*, 115 F.3d at 662.

For over a decade, we upheld the interpretation that the BIA announced in *Espinoza-Gonzalez*—requiring a nexus to an ongoing proceeding—as a plausible construction. *See Trung Thanh Hoang v. Holder*, 641 F.3d 1157, 1161, 1164 (9th Cir. 2011); *Salazar-Luviano v. Mukasey*, 551 F.3d 857, 860 (9th Cir. 2008); *Renteria-Morales v. Mukasey*, 551 F.3d 1076, 1086–87 (9th Cir. 2008). This demonstrates that "a less constitutionally troubling construction is readily available." *See Babbitt*, 115 F.3d at 666. We do not independently inquire into another interpretation, *see DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 577 (1988); we leave it to the BIA to "adopt any interpretation that doesn't come perilously close to the constitutional boundary." *See Babbitt*, 115 F.3d at 663. "And, of course, Congress may . . . remov[e] the statutory ambiguity and mak[e] it clear that it chooses the constitutionally doubtful interpretation—in which event, the

courts will have to confront the constitutional question squarely." *Id.*

Our decision to remand to the BIA, rather than attempt to reconcile the questions that arise from the interpretation its three-judge panel announced in *Valenzuela Gallardo*, is consistent with the charge from Congress that the BIA administer the INA. *See Gonzalez v. Thomas*, 547 U.S. 183, 186 (2006) (per curiam). It is also consistent with the government's request in its supplemental briefing that the court remand for the Board to provide an alternative definition of the ambiguous statute if we agree with the petitioner's view of this one.

We remand to the agency so that it can either offer a new construction of INA § 101(a)(43)(S) or, in the alternative, apply *Espinoza-Gonzalez*'s interpretation to the instant case.

## CONCLUSION

We grant Valenzuela Gallardo's petition for review and remand to the BIA for proceedings consistent with this opinion.

**PETITION GRANTED AND REMANDED.**

SEABRIGHT, District Judge, dissenting:

For several reasons, I respectfully disagree with the majority Opinion, and dissent.

## I. Overview

First, *In re Valenzuela Gallardo*, 25 I. & N. Dec. 838 (B.I.A. 2012), did not announce a new Board of Immigration Appeals ("BIA") interpretation that removed a required nexus between an obstructive act and an existing proceeding, thereby rendering its interpretation vague. The majority Opinion concludes that *Valenzuela Gallardo* raises grave constitutional vagueness concerns by changing a well-settled BIA construction, and gives the BIA an option of applying its "previous interpretation" on remand. But the majority Opinion relies on a mistaken premise that *In re Espinoza-Gonzalez*, 22 I. & N. Dec. 889 (B.I.A. 1999) (en banc), previously required a nexus to an ongoing investigation or proceeding for a crime of conviction to be "an offense relating to obstruction of justice" for purposes of 8 U.S.C. § 1101(a)(43)(S).[1] In fact, *Espinoza-Gonzalez* did not (and *Valenzuela Gallardo* explains why). *Valenzuela Gallardo* is not a change from BIA precedent – it is a change from this Circuit's *interpretation* of BIA precedent.

As explained to follow, *Valenzuela Gallardo* explicitly clarified language in *Espinoza-Gonzalez*, in light of what the BIA considers to be the Ninth Circuit's misreading of BIA

---

[1] 8 U.S.C. § 1101(a)(43)(S) provides that "[t]he term 'aggravated felony' means . . . an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year[.]"

precedent in *Hoang v. Holder*, 641 F.3d 1157 (9th Cir. 2011). Further, *Valenzuela Gallardo* specifically reaffirmed *In re Batista-Hernandez*, 21 I. & N. Dec. 955 (B.I.A. 1997) (en banc), which held that 18 U.S.C. § 3 – a crime that is indistinguishable from California Penal Code § 32 which is at issue here – is indeed a crime "relating to obstruction of justice."**[2]** *Valenzuela Gallardo* did not purport to overrule or change the BIA's prior (and still valid) en banc precedent, although it surely meant to trump *Hoang*. And as the majority Opinion acknowledges, this is the BIA's prerogative under principles of deference set forth in *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 982 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.") (applying *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).

Thus, viewed in proper context, the matter should be analyzed under the familiar *Chevron* standard where, given a statutory ambiguity, courts defer to an agency's construction of a statute it administers if its construction "reflects a plausible reading of the statutory text." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 493 (9th Cir. 2007) (en banc) (discussing and applying *Chevron*).

---

**[2]** California Penal Code § 32 provides that "[e]very person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."

Second, although the majority Opinion acknowledges that the term "relating to obstruction of justice" in § 1101(a)(43)(S) is ambiguous, it refuses to give deference to the BIA's reasonable, permissible, and plausible formulation at *Chevron* step two. But this type of refusal should be reserved for "major" or "extraordinary cases." *See King v. Burwell*, 135 S. Ct. 2480, 2488–89 (2015) (explaining that deference under *Chevron* to an agency's construction of a statute that it administers "is premised on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps. . . . In *extraordinary cases*, however, there may be reason to hesitate before concluding that Congress has intended such an implicit delegation") (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)) (emphasis added). And unlike *King's* challenge to the Patient Protection and Affordable Care Act, this is not an extraordinary case.

Instead of deferring, the majority applies the canon of constitutional avoidance because it views the BIA's construction as approaching a constitutional boundary – vagueness – a type of interpretation that it believes Congress could not have intended. But applying the constitutional avoidance doctrine in this instance, where the context calls for an ordinary *Chevron* analysis, allows the exception to swallow the rule. *See, e.g.*, *Nat'l Mining Ass'n v. Kempthorne*, 512 F.3d 702, 711 (D.C. Cir. 2008) ("[W]e do not abandon *Chevron* deference at the mere mention of a possible constitutional problem; the argument must be serious."). The BIA's formulation (whether a crime "includes the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice, irrespective of the existence of an ongoing criminal

investigation or proceeding") does not raise "grave" constitutional vagueness concerns.

The majority Opinion reasons that without a nexus to an existing proceeding or investigation, the BIA's definition fails to indicate the contours of "the process of justice," thereby presenting grave or serious constitutional concerns. But many obstruction crimes do not require an ongoing or pending proceeding – crimes which are undoubtedly "*relating to* obstruction of justice" (a term indicating that Congress specifically intended to *broaden* – not narrow – the scope of qualifying obstruction crimes). Such crimes require a nexus only to a *foreseeable* or *contemplated* investigation (*e.g.*, 18 U.S.C. § 1512(b)(1)), or to a specific *type* of proceeding (*e.g.*, 18 U.S.C. § 1519), or otherwise to "the process of justice" such as by hindering or preventing an offender's apprehension or arrest (*e.g.*, 18 U.S.C. § 3) and thereby materially interfering with the ability to investigate or prosecute. That is, there is no temporal nexus requirement. The absence of a specific requirement for an *ongoing* investigation or pending proceeding does not render the BIA's definition vague, much less create grave constitutional doubts on that score.

Finally, to the extent the constitutional avoidance doctrine can apply to the BIA's formulation in the current *Chevron* context, we should apply it differently than the majority Opinion does. If the BIA's formulation raises serious questions as to vagueness, then – as has been done previously – we should construe the agency's precedent in a readily-apparent way that is constitutional, not remand with an option for the BIA to apply its previous interpretation. *See, e.g.*, *Williams v. Babbitt*, 115 F.3d 657, 666 (9th Cir. 1997) ("The constitutional questions raised by the [Interior Board of

Indian Appeals'] interpretation are grave . . . . We therefore interpret the Reindeer Act as not precluding non-natives in Alaska from owning and importing reindeer."); *United States v. Stansell*, 847 F.2d 609, 615 (9th Cir. 1988) ("Because a reasonable limiting construction can be placed on the challenged regulation, we hold that [it] is not substantially overbroad.").

And the BIA's formulation can certainly be viewed to include a required nexus – short of a pending or ongoing investigation. The formulation requires an affirmative attempt (*i.e.*, an act), with *specific* intent, to interfere with *the process of justice* – sufficiently encapsulating the type of nexus or connection required in crimes such as 18 U.S.C. §§ 1512(b)(1), 1519, and 3 (and thus to California Penal Code § 32 at issue here). *Valenzuela Gallardo* also specifically refers to acts that clearly constitute obstruction – without a pending proceeding or investigation – in giving obvious meaning to the phrase "the process of justice." *See* 25 I. & N. Dec. at 841–42 (referring to acts with intent "to hinder or prevent [the principal's] *apprehension, trial or punishment*" and "that [the] principal may avoid or escape from *arrest, trial, conviction or punishment*") (emphasis added). And it reaffirms its en banc precedent further explaining "the process of justice." *See id.* at 840 (explaining that obstruction occurs with an act meant to "*prevent[] the arrest* of the offender") (quoting *Batista-Hernandez*, 21 I & N. Dec. at 961). We need not remand for further explanation.

To follow, I explain these points in more detail.

## II.  Applying *Brand-X*, *Valenzuela Gallardo* clarified prior BIA decisions in light of *Hoang*

It is undisputed that the Immigration and Nationality Act ("INA") does not provide specific guidance as to the meaning of "an offense relating to obstruction of justice" in § 1101(a)(43)(S) – that is, the term is ambiguous.  *See, e.g.*, *Renteria-Morales v. Mukasey*, 551 F.3d 1076, 1086 (9th Cir. 2008) ("[Section] 1101(a)(43)(S) does not clearly set forth the elements of the generic federal crime.  Because the INA does not define the phrase 'offense relating to obstruction of justice,' we must determine whether there is any binding agency precedent on-point which does define that phrase.") (citations and some quotation marks omitted); *Salazar-Luviano v. Mukasey*, 551 F.3d 857, 860 (9th Cir. 2008) ("Because Congress itself did not define the phrase 'offense relating to obstruction of justice' in the INA, we defer to the BIA's 'interpretation of the elements of a generic obstruction of justice offense under § 1101(a)(43)(S)[.]") (citation and editorial marks omitted); *Hoang*, 641 F.3d at 1160 ("Though the United States criminal code includes a chapter entitled 'Obstruction of Justice,' 18 U.S.C. §§ 1501–1521, it does not clearly set forth the elements of a generic federal obstruction of justice crime; nor does § 1101(a)(43)(S) provide a generic definition.  Consequently, we must determine whether the agency charged with implementing the INA has defined the term.") (citation and footnote omitted).

Under *Chevron*, given an ambiguity in a statute that an agency administers, a court "does not impose its own construction of the statute, but rather it decides 'whether the agency's answer is based on a permissible construction of the statute.'"  *Gonzales v. Dep't of Homeland Sec.*, 508 F.3d 1227, 1235 (9th Cir. 2007) (quoting *Chevron*, 467 U.S. at

843).  And *Brand X* "instructed federal courts to defer to reasonable agency interpretations of ambiguous statutes, even when those interpretations conflict with the prior holding of a federal circuit court."   *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 507 (9th Cir. 2012) (en banc) (citing *Brand X*, 545 U.S. at 982–83).  In other words, "[a] circuit court must apply *Chevron* deference to an agency's interpretation of a statute regardless of the circuit court's contrary precedent, provided that the court's earlier precedent was an interpretation of a statutory ambiguity." *Gonzales*, 508 F.3d at 1235–36 (citing *Brand X*, 545 U.S. at 980–82).

In 2011, a majority in *Hoang* (over a dissent from Judge Bybee) interpreted BIA precedent regarding § 1101(a)(43)(S) to *require* a pending proceeding or investigation such that a Washington crime of rendering criminal assistance is not an offense "relating to obstruction of justice."   641 F.3d at 1162–64.  *Hoang* thus concluded that the Washington statute was categorically not an aggravated felony because it potentially criminalized the rendering of criminal assistance "*before* any investigation or judicial proceeding has begun." 641 F.3d at 1162.  It did so, however, despite an en banc BIA decision, *Batista-Hernandez*, which held that a conviction of 18 U.S.C. § 3 (accessory after the fact) "clearly relates to obstruction of justice."   21 I. & N. Dec. at 961.[3]  *Batista-Hernandez* cited "the wording of 18 U.S.C. § 3" and caselaw reasoning that "the nature of being an accessory after the fact

---

[3] 18 U.S.C. § 3 ("Accessory after the fact") provides in pertinent part:

> Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.

lies essentially in obstructing justice and preventing the arrest of the offender." *Id.* (citing *United States v. Barlow*, 470 F.2d 1245, 1252–53 (D.C. Cir. 1972)). The BIA reasoned that 18 U.S.C. § 3 "criminalizes actions knowingly taken to 'hinder or prevent (another's) apprehension, trial or punishment.'" *Id.*

*Hoang* relied in part on another BIA en banc decision, *Espinoza-Gonzales*, issued two years after *Batista-Hernandez*. The BIA in *Espinoza-Gonzales* (in a decision written by Board Member Grant) held that the federal crime of misprision of a felony under 18 U.S.C. § 4 is *not* "an offense relating to obstruction of justice." 22 I. & N. Dec. at 892–95.[4] The *Hoang* majority analyzed the BIA's approach to the differences between 18 U.S.C. § 3 and 18 U.S.C. § 4 as follows:

> *Espinoza-Gonzalez* distinguished misprision of a felony from accessory after the fact on the grounds that the latter both "references the specific purpose for which" the act is done, 22 I. & N. Dec. at 894, *and* requires "as an element either active interference with proceedings of a tribunal or investigation, or action or threat of action against those who

---

[4] 18 U.S.C. § 4 ("Misprision of felony") provides:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

would cooperate in the process of justice." *Id.* at 895. The BIA stated that "concealment of a crime [as in 18 U.S.C. § 4] is qualitatively different from an affirmative action to hinder or prevent another's apprehension, trial, or punishment [as in 18 U.S.C. § 3]. *It is a lesser offense to conceal a crime where there is no investigation or proceeding*, or even an intent to hinder the process of justice. . . ." *Id.* at 895 (emphasis added). Taken as a whole, *Espinoza-Gonzalez* does not suggest that the BIA considered accessory after the fact to be an offense relating to obstruction of justice *even though* it does not require the defendant to interfere with an ongoing proceeding or investigation. The language used indicates that the BIA now concludes [in *Espinoza-Gonzalez*] that accessory after the fact is an obstruction of justice crime *when* it interferes with an ongoing proceeding or investigation.

641 F.3d at 1164.

A year later, the BIA in *Valenzuela Gallardo* specifically responded to *Hoang* (in a decision also written by Board Member Grant, the author of *Espinoza-Gonzalez*) by explicitly reaffirming *Batista-Hernandez* and clarifying *Espinoza-Gonzales*. *See Valenzuela Gallardo*, 25 I. & N. Dec. at 844. The BIA "respectfully invoke[d] the authority in *Brand X* to clarify [its] prior precedents on the scope of the phrase 'relating to obstruction of justice.'" *Id.* at 840. In explaining *Espinoza-Gonzales*, *Valenzuela Gallardo* reiterated that the key distinction between 18 U.S.C. § 3 and 18 U.S.C. § 4 is that § 3 "references the specific purposes for

the concealment, which are hindering or preventing the 'apprehension, trial or punishment' of the principal offender." *Id.* at 841 (quoting 18 U.S.C. § 3). In contrast, "nothing in § 4 . . . references the specific purpose[.]" *Id.* (quoting *Espinoza-Gonzalez*, 22 I. & N. Dec. at 894). *Valenzuela Gallardo* reasoned:

> [W]e supported this distinction by pointing out that "concealment of a crime is qualitatively different from an affirmative action to hinder or prevent another's apprehension, trial or punishment." [*Espinoza-Gonzalez*, 22 I. & N. Dec.] at 895. We concluded that misprision does not constitute "obstruction of justice" because "it lacks the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice." *Id*. at 896. This element – the affirmative and intentional attempt, with specific intent, to interfere with the process of justice – demarcates the category of crimes constituting obstruction of justice. While many crimes fitting this definition will involve interference with an ongoing criminal investigation or trial, *id.* at 892–93, we now clarify that the existence of such proceedings is not an essential element of "an offense relating to obstruction of justice."

25 I. & N. Dec. at 841.

In other words, the BIA disagrees with the *Hoang* majority's conclusion that "[t]aken as a whole, *Espinoza-*

*Gonzalez* does not suggest that the BIA considered accessory after the fact to be an offense relating to obstruction of justice *even though* it does not require the defendant to interfere with an ongoing proceeding or investigation." *Hoang*, 641 F.3d at 1164. It disagrees with the *Hoang* majority's interpretation that "the BIA now concludes [in *Espinoza-Gonzalez*] that accessory after the fact is an obstruction of justice crime *when* it interferes with an ongoing proceeding or investigation." *Id. Espinoza-Gonzales* never required a crime of conviction to have as an element *only* "active interference with proceedings of a tribunal;" it always required "*either* active interference with proceedings of a tribunal or investigation, *or* action or threat of action against those who would cooperate in the process of justice." 22 I. & N. Dec. at 893 (emphasis added).

The purpose of *Valenzuela Gallardo* was not to announce a new comprehensive BIA interpretation; it was simply to reaffirm and clarify its precedent that – despite *Hoang* – a pending or ongoing investigation or proceeding is not a necessary element of a crime "relating to obstruction of justice." 25 I. & N. Dec. at 844. It must be read together with both *Batista-Hernandez* and *Espinoza-Gonzalez* as establishing the BIA's construction of "relating to obstruction of justice."

Applying the categorical approach to California Penal Code § 32, *Valenzuela Gallardo* then reasoned that:

> The provisions of this statute are closely analogous, if not functionally identical, to those in 18 U.S.C. § 3. Critically, both statutes include the element of an affirmative and intentional attempt, motivated by a

specific intent, to interfere with the process of justice. *See* 18 U.S.C. § 3 (requiring that the offender act "*in order to hinder or prevent* [the principal's] apprehension, trial or punishment") (emphasis added); Cal. Penal Code § 32 (West 2012) (requiring that the offender act "*with the intent that [the] principal may avoid or escape from* arrest, trial, conviction or punishment") (emphasis added)[.]

25 I. & N. Dec. at 841–42. The BIA thus gives meaning to the term "process of justice" by referring to statutes and obstructive acts even without a pending proceeding or ongoing investigation.[5] And it based its decision on the same key factor that it has applied since at least 1999 in *Espinoza-Gonzalez* – whether a crime has "the critical element of an affirmative and intentional attempt, motivated by specific intent, to interfere with the process of justice." In this fundamental aspect, the decision was hardly a new interpretation.

*Valenzuela Gallardo* also considered that § 1101(a)(43)(S) requires only an offense to be "relating to" obstruction of justice, indicating that a broader reading is proper. 25 I. & N. Dec. at 843. And it recognized that the Third Circuit in *Denis v. Attorney General*, 633 F.3d 201, 209 (3d Cir. 2011), considered the phrase "relating to obstruction

---

[5] Furthermore, "hindering or preventing" a principal's "apprehension, trial, or punishment" satisfies a "materiality" requirement that may be necessary to satisfy vagueness concerns with some obstruction crimes. *See, e.g.*, *United States v. Bonds*, 784 F.3d 582, 585 (9th Cir. 2015) (en banc) (Kozinski, J., concurring).

of justice" to be unambiguous such that a conviction for accessory after the fact in the Third Circuit would necessarily qualify as an obstruction offense under § 1101(a)(43)(S). Reasoning (properly) that "[a]n important purpose of [BIA] precedent is the establishment of a uniform interpretation of law in cases before the Immigration Judges and the [BIA]," *id.* at 844 (quoting *Matter of U. Singh*, 25 I. & N. Dec. 670, 672 (B.I.A. 2012)), it concluded that "accessory after the fact offenses necessarily relate to obstruction of justice" irrespective of the existence of an ongoing criminal investigation or proceeding. *Id.*[6]

---

[6] After *Valenzuela Gallardo* was issued in 2012, the Eighth Circuit similarly interpreted *Espinoza-Gonzales* to mean that a Nebraska witness-tampering statute (Neb. Rev. Stat. § 28-919(1)) is a crime "relating to obstruction of justice" for purposes of § 1101(a)(43)(S). *See Armenta-Lagunas v. Holder*, 724 F.3d 1019, 1022–24 (8th Cir. 2013). Although *Armenta-Lagunas* did not specifically address vagueness or whether a pending proceeding is required, it found nothing uncertain about the BIA's formulation:

> [T]he offenses entitled "Obstruction of Justice" all required "the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice." [*Espinoza-Gonzales*, 22 I. & N. Dec.] at 894. "In other words . . . it must include as elements both (1) the actus reus of an 'active interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice,' and (2) the mens rea of a 'specific intent to interfere with the process of justice.'" *Higgins v. Holder*, 677 F.3d 97, 102 (2d Cir. 2012) (quoting *Espinoza-Gonzalez*, 22 I. & N. Dec. at 893).

724 F.3d at 1022.

In short, this case involves a straightforward application of *Chevron*.  The court should defer to the BIA's reasonable, permissible, and plausible interpretation of § 1101(a)(43)(S).

### III.     The use of the constitutional avoidance doctrine in this case undermines Congressional intent

Moreover, in the context now before us – where it is undisputed that the statutory language is ambiguous – the constitutional avoidance doctrine is an inappropriate framework to disregard the BIA's interpretation.  Certainly, if the BIA's definition is unconstitutional, then we have the power to strike it or make such a declaration.  But *Morales-Izquierdo*, an en banc opinion of this court, in no uncertain terms reasons that "the constitutional avoidance doctrine . . . plays no role in the second *Chevron* inquiry."  486 F.3d at 493.  That is,

---

Similarly, the Second Circuit in *Higgins* concluded that a Connecticut witness-tampering statute (Conn. Gen. Stat. § 53a-151) is a crime "relating to obstruction of justice."  *See* 677 F.3d at 105–06 (citing *Espinoza-Gonzales*).  And in *United States v. Gamboa-Garcia*, 620 F.3d 546 (5th Cir. 2010), the Fifth Circuit held the same for an Idaho accessory statute (Idaho Code § 18-205).  *See id.* at 550.

Notably, the witness-tampering statutes analyzed in *Armenta-Lagunas* and *Higgins* both require a perpetrator to "believ[e] that an official proceeding" "is pending *or about to be instituted*."  *Armenta-Lagunas*, 724 F.3d at 1023 (emphasis added); *Higgins*, 677 F.3d at 104 (same). Likewise, Idaho Code § 18-205, analyzed in *Gamboa-Garcia*, does not refer to a pending proceeding.  The majority Opinion's approach is thus inconsistent with the Second (*Higgins*), Fifth (*Gamboa-Garcia*) and Eighth Circuits (*Armenta-Lagunas*) – creating or perpetuating a circuit split.

we are not deciding between two plausible statutory constructions; we are evaluating an agency's interpretation of a statute under *Chevron*.  At step two of this inquiry, our function is "not simply [to] impose [our] own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute."  When Congress has explicitly or implicitly left a gap for an agency to fill, and the agency has filled it, we have no authority to re-construe the statute, *even to avoid potential constitutional problems; we can only decide whether the agency's interpretation reflects a plausible reading of the statutory text*.

*Id.* at 492–93 (quoting *Chevron*, 467 U.S. at 843) (emphasis added) (brackets and ellipses in original).[7]

Rather than giving deference to the BIA's permissible formulation, the majority Opinion (avoiding *Morales-Izquierdo's* logic) relies on authority indicating that constitutional avoidance *can* apply at *Chevron* step one. *See, e.g.*, *Morales-Izquierdo*, 486 F.3d at 504 ("The avoidance canon . . . is properly applied at step one of the *Chevron*

---

[7] *See also Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) ("[T]he doctrine is unavailing to petitioner, because, as the Ninth Circuit held, once an ambiguous statute has been interpreted by the agency in charge of its implementation, we lack the 'authority to re-construe the statute, even to avoid potential constitutional problems.'") (quoting *Morales-Izquierdo*, 486 F.3d at 493).

analysis. While . . . the avoidance canon cannot be used to render an agency's interpretation 'unreasonable' at *Chevron* step two, the canon is unquestionably a 'traditional tool of statutory interpretation' that may and should be used to determine whether Congress intended to preclude the agency's chosen interpretation.") (citations omitted) (Thomas, C.J., dissenting); *but cf. Olmos v. Holder*, 780 F.3d 1313, 1321 (10th Cir. 2015) ("[T]he canon on constitutional avoidance does not bear on our inquiry at step one.").

That is, although the majority Opinion acknowledges that the term "relating to obstruction of justice" is ambiguous, it applies the canon of constitutional avoidance because Congress could not have intended an agency construction that approaches a constitutional boundary without some indication allowing such a construction. But this reasoning utterly disregards the term "relating to," which indicates a broad interpretation – meaning Congress intended to include not only crimes that actually constitute "obstruction of justice," but also crimes that are "relating to" such crimes. *See, e.g.*, *Rodriguez-Valencia v. Holder*, 652 F.3d 1157, 1159 (9th Cir. 2011) ("When interpreting the INA, we construe the 'relating to' language broadly.") (quoting *Luu-Le v. I.N.S.*, 224 F.3d 911, 915 (9th Cir. 2000) (some quotation marks omitted)).

For example, in analyzing an aggravated felony statute, 8 U.S.C. § 1101(a)(43)(R) (including as an aggravated felony an "offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles . . . for which the term of imprisonment is at least one year"), *Albillo-Figuero v. I.N.S.*, 221 F.3d 1070 (9th Cir. 2000), held that the clause "relating to" "necessarily covers a range of activities beyond those of counterfeiting or forgery itself." *Id.* at 1073. As *Kamagate v. Ashcroft*, 385 F.3d 144 (2d Cir. 2004), reasoned, "the

phrase 'relating to' . . . is [often] used [in the INA] . . . to define aggravated felonies by reference to the general subject of the offense of conviction, suggesting Congress's intent to reach more broadly than any single statute." *Id.* at 154 (citing 8 U.S.C. §§ 1101(a)(43)(K)(i), (Q), (S), & (T)).[8]

Thus, by using the term "relating to" in § 1101(a)(43)(S), Congress intended to reach a wide spectrum of obstruction crimes, even those that may reach near to the limits of congressional authority. It surely meant to include *more than* crimes constituting obstruction of justice, not just some of them.

The exception "to hesitate before concluding that Congress has intended such an implicit delegation," should be reserved for major or "extraordinary cases." *See Brown & Williamson*, 529 U.S. at 159 ("In *extraordinary cases*, however, there may be reason to hesitate before concluding that Congress has intended such an implicit delegation.") (emphasis added) (citing Stephen Breyer, *Judicial Review of Questions of Law and Policy*, 38 Admin. L. Rev. 363, 370 (1986)). And, although the issues we face regarding the meaning of "relating to obstruction of justice" have proven to be challenging, this is not an extraordinary case. *Compare*

---

[8] Contrary to the majority's view, *Mellouli v. Lynch*, 135 S. Ct. 1980, 1990 (2015) (cautioning that courts may not extend "relating to" "to the furthest stretch of [its] indeterminacy" where language and historical context "tug in favor of a narrower reading") does not change this reasoning. *See United States v. Sullivan*, 797 F.3d 623, 639 (9th Cir. 2015) ("[W]e interpret the phrase 'relating to' broadly . . . unless the text and history of the statute require a narrower construction.") (some editorial marks and citation omitted) (discussing *Mellouli*), *petition for cert. filed* (U.S. Jan. 28, 2016) (No. 15-7875). Nothing here "tugs in favor of a narrower reading" as was analyzed in *Mellouli*.

*King*, 135 S. Ct. at 2489  (upholding the Patient Protection and Affordable Care Act despite statutory ambiguity because "[t]his is one of those [extraordinary] cases") (referring to *Brown & Williamson*, 529 U.S. at 159).  Because this is not such a case, the BIA is owed deference.  And applying the constitutional avoidance doctrine in this instance – where the constitutional questions are not "serious" (as explained to follow) – invites courts to apply an exception whenever there is statutory ambiguity.  *Cf. Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995) ("[W]e must not allow [an] exception for constitutional questions to swallow the rule.").

The majority Opinion correctly states that we must ask whether Congress intended to permit the agency interpretation, and the doctrine of constitutional avoidance can sometimes aid in this task.  But by reading the term "relating to" out of the statute, the majority Opinion ignores true Congressional intent.  That is, because Congress' use of the term "relating to" demonstrates intent to broaden the scope of covered obstruction-related crimes, the doctrine should not be employed to narrow the scope of covered crimes.  In short, the majority Opinion's use of the doctrine as applied here does not further Congressional intent but instead undermines it.

## IV.     The BIA's construction does not present "serious" or "grave" constitutional concerns

More to the point, even examining the BIA's construction at *Chevron* step one, the constitutional avoidance doctrine only applies to truly "serious" constitutional questions.  *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. and Constr. Trades Council*, 485 U.S. 568, 577 (1988); *Williams*, 115 F.3d at 662 ("Only if the agency's proffered

interpretation raises *serious* constitutional concerns may a court refuse to defer under *Chevron.*"). They must be "grave." *Rust v. Sullivan*, 500 U.S. 173, 191 (1991); *Williams*, 115 F.3d at 663 ("[C]onstitutional narrowing should displace *Chevron* only when the constitutional problems are truly 'grave' . . . because all possible interpretations raise constitutional problems."). "[T]he 'constitutional doubt' doctrine does not apply mechanically whenever there arises a significant constitutional question the answer to which is not obvious." *Almendarez-Torres v. United States*, 523 U.S. 224, 239 (1998). That is, "we do not abandon *Chevron* deference at the mere mention of a possible constitutional problem[.]" *Kempthorne*, 512 F.3d at 711. "An agency's interpretation may be permissible even if it would create constitutional issues." *Olmos*, 780 F.3d at 1322–23 (citing *Morales-Izquierdo*, 486 F.3d at 493).

Here, the BIA's interpretation in *Valenzuela Gallardo* does not approach the void-for-vagueness line. It is true that obstruction of justice crimes punishing acts intended to impede "the due administration of justice," such as the omnibus clause in 18 U.S.C. § 1503(a), have a potentially "vast" coverage. *Bonds*, 784 F.3d at 583 (Kozinski, J., concurring). But federal obstruction statutes are not unconstitutionally vague where they include a mens rea of "corruptly persuade" or "corruptly endeavor." *See, e.g.*, *United States v. Jeter*, 775 F.2d 670, 679 (6th Cir. 1985) (rejecting that 18 U.S.C. § 1503 is unconstitutionally overbroad or vague given "its explicit *mens rea* requirement that a person must 'corruptly' endeavor to interfere with the due administration of justice. Thus, one must impede the due administration of justice with the general intent of knowledge as well *as the specific intent of purpose to obstruct*.") (citations omitted); *United States v. Shotts*, 145 F.3d 1289,

1300 (11th Cir. 1998) (rejecting vagueness challenge to 18 U.S.C. § 1512(b), reasoning in part that "'corrupt' is a scienter requirement which provides adequate notice of what conduct is proscribed") (citing *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996)).

Under Ninth Circuit law, "corruptly" in this context means that the obstructive conduct "must be done with the purpose of obstructing justice." *United States v. Rasheed*, 663 F.2d 843, 852 (9th Cir. 1981); *United States v. Laurins*, 857 F.2d 529, 536–37 (9th Cir. 1988).[9] And this definition of "corruptly" is the functional equivalent to the BIA's language at issue here ("the affirmative and intentional attempt, with specific intent, to interfere with the process of justice, irrespective of the existence of an ongoing criminal investigation or proceeding"). That is, the BIA requires a "corrupt" mens rea in its construction.

The majority Opinion reasons that without a nexus to pending or ongoing proceedings – as the Ninth Circuit in *Hoang* had interpreted *Espinoza-Gonzales* – the meaning of "the process of justice" is vague (or approaches that line). And it is true that many, if not all, obstruction crimes require *some* connection between the obstructive act and a "proceeding." *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 707–08 (2005) (indicating that a nexus to a foreseeable or contemplated proceeding might suffice under 18 U.S.C. § 1512). But in my view, because a pending

---

[9] *Cf.* 18 U.S.C. § 1515(b) ("As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.").

proceeding does not create the necessary connection, the BIA's definition is not missing the required nexus. If a person specifically interferes with an ongoing investigation, then the requisite specific purpose of an obstructive act is obvious. But obstruction does not *require* the investigation or proceeding to be pending. "Pending" is sufficient, but not necessary. And its absence does not render the definition unconstitutionally vague.

Rather, what is necessary is a connection to some contemplated "process of justice" that encompasses an "evil intent to obstruct." *United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("[A] person lacking knowledge of a pending proceeding necessarily lacked the evil intent to obstruct.") (citing *Pettibone v. United States*, 148 U.S. 197, 207 (1893)). This "evil intent" is adequately articulated by the BIA as "an affirmative and intentional attempt, with specific intent, to interfere with the process of justice." Moreover, *Valenzuela Gallardo* (as well as *Batista-Hernandez* and *Espinoza-Gonzalez*) describes or refers to "the process of justice" as including arrest, apprehension, conviction, or punishment. *See* 25 I. & N. Dec. at 841–42. *Valenzuela Gallardo* also refers to specific federal obstruction crimes, as detailed to follow, that do not require proceedings to be pending, and that also give further meaning to "the process of justice."

### A. Crimes Under 18 U.S.C. § 1512

Prime examples of federal obstruction crimes that do not require "pending proceedings" are witness-tampering crimes set forth in 18 U.S.C. § 1512 such as:

> • 18 U.S.C. § 1512(b) ("Whoever knowingly uses intimidation, threatens, or corruptly

persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to – (1) influence, delay, or prevent the testimony of any person in an official proceeding"); and

• 18 U.S.C. § 1512(c) ("Whoever corruptly – (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.").

Although these crimes require some connection to an "official proceeding," they do not require it to be pending. *See* 18 U.S.C. § 1512(f)(1) ("For the purposes of this section . . . an official proceeding need not be pending or about to be instituted at the time of the offense."). Congress adopted this language to encompass a perpetrator's actions even *before* an investigation has begun. Legislative history explains:

> [Section 1512(f)(1)] obviates the requirement that there be an official proceeding in progress or pending. The Committee felt that this increases the scope of the section by expanding the galaxy of witnesses and victims the protections of its language is meant to embrace. Intimidation offenses are particularly insidious and do violence to traditional notions of justice because no one

can be convicted of a crime which is not reported. *Subsection [(f)(1)], among other things, specifically reaches intimidation offenses before a crime is reported to the appropriate authorities.*

Judiciary Comm., 97th Cong., Victim and Witness Protection Act of 1982, S. Rep. No. 97-532, at 19 (1982), reprinted in 1982 U.S.C.C.A.N. 3 (emphasis added).

That is, although the government must still connect the obstructive act to an official proceeding under § 1512(b)(1), *see Arthur Andersen*, 544 U.S. at 707–08, the nexus does not have to be to an *ongoing* proceeding. Rather, it requires proof under § 1512(b)(1) of a foreseeable or contemplated proceeding. *See id.* ("It is, however, one thing to say that a proceeding 'need not be pending or about to be instituted at the time of the offense,' and quite another to say a proceeding need not even be foreseen. A 'knowingly . . . corrup[t] persuade[r]' cannot be someone who persuades others to shred documents under a document retention policy when he does not have in contemplation any particular official proceeding in which those documents might be material."); *see also United States v. Friske*, 640 F.3d 1288, 1292 n.5 (11th Cir. 2011) ("Consistent with *Aguilar's* nexus requirement, the government must prove [under § 1512(c)(2)] that the defendant knew of or foresaw an official proceeding, and knew that his actions were likely to affect it.").

Other obstruction of justice crimes in § 1512 do not even require an "official proceeding:"

- 18 U.S.C. § 1512(d)(2) ("Whoever intentionally harasses another person and

thereby hinders, delays, prevents, or dissuades any person from . . . reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense . . . . or attempts to do so, shall be fined under this title or imprisoned not more than 3 years, or both."); and

•    18 U.S.C. § 1512(b)(3) ("Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . shall be fined under this title or imprisoned not more than 20 years, or both.").

These sections "make[] no mention of 'an official proceeding' and do[] not require that a defendant's misleading conduct relate in any way either to an 'official proceeding' or even to a particular ongoing investigation." *United States v. Ronda*, 455 F.3d 1273, 1288 (11th Cir. 2006). "[Section] 1512(b)(3) requires only that a defendant intended to hinder, delay, or prevent communication to any 'law enforcement officer or judge of the United States' [and thus] requires only 'the *possible* existence of a federal crime and a defendant's intention to thwart an inquiry into that crime.'" *Id*. (quoting *United States v. Veal*, 153 F.3d 1233, 1250 (11th Cir. 1998)). *See also, e.g.*, *United States v. Guadalupe*, 402 F.3d 409, 411 (3d Cir. 2005) ("[P]roving a

violation of 18 U.S.C. § 1512(b)(3) *does not depend on the existence or imminency of a federal investigation* but rather on the *possible* existence of a federal crime and a defendant's intention to thwart an inquiry into that crime by officials who happen to be federal.") (emphases added); *United States v. Baldyga*, 233 F.3d 674, 680 (1st Cir. 2000) (noting that defendant's conduct violated § 1512(b)(3) where he hindered government cooperator's "communication with authorities" and where "the *possibility* existed that such communication would eventually occur with federal officials") (emphasis added).

These types of obstruction crimes, while not requiring a nexus to a pending proceeding, can fairly and reasonably be said to require a specific intent to interfere with "the process of justice." *See, e.g.*, *United States v. Byrne*, 435 F.3d 16, 24 (1st Cir. 2006) ("[S]ubsection (b)(3) 'does not connect the federal interest with an ongoing or imminent judicial proceeding,' but rather 'speaks more broadly' to 'the character of the affected activity, the transmission of information to federal law enforcement agents[.]'") (quoting *Veal*, 153 F.3d at 1250–51). *See also United States v. Phillips*, 583 F.3d 1261, 1264 (10th Cir. 2009) ("[I]n terms of the *Aguilar* nexus requirement, a conviction is proper [under § 1512(c)] if interference with the official proceeding is the 'natural and probable effect' of the defendant's conduct."); *Friske*, 640 F.3d at 1292 ("*Aguilar* relied on the principle that 'a person lacking knowledge of a pending proceeding necessarily lack[s] the evil intent to obstruct.'") (quoting *Aguilar*, 515 U.S. at 599).

## B.  Another example – 18 U.S.C. § 1519

Another example is destroying documents intending to obstruct a federal investigation under 18 U.S.C. § 1519. This obstruction crime has a very specific mens rea.  It criminalizes the knowing alteration, destruction, mutilation, etc., of records, documents, or "tangible objects," intending to obstruct the investigation or proper administration of matters within federal jurisdiction.[10]  Section 1519 "covers conduct intended to impede any federal investigation or proceeding *including one not even on the verge of commencement*." *Yates v. United States*, 135 S. Ct. 1074, 1087 (2015) (emphasis added).  *See also United States v. Gray*, 642 F.3d 371, 379 (2d Cir. 2011) ("[Section] 1519 does not require the existence or likelihood of a federal investigation."); *United States v. Moyer*, 674 F.3d 192, 210 (3d Cir. 2012) ("[The government] was not required to prove that [Defendant] intended to obstruct or impede a specific federal investigation.").  "To ensure that the statute is applied 'broadly,' criminal liability 'also extends to acts done *in contemplation of* such federal matters, so that the timing of the act in relation to the beginning of the matter or

---

[10] Section § 1519, entitled "Destruction, alteration, or falsification of records in Federal investigations and bankruptcy," provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

investigation is also not a bar to prosecution.'" *Moyer*, 674 F.3d at 210 (quoting S. Rep. No. 107-146, at 13 (2002)); *see also United States v. Yielding*, 657 F.3d 688, 711 (8th Cir. 2011) (similar reasoning).[11]

Section 1519 is not vague. "Section 1519's scienter requirement . . . eliminates any concerns regarding statutory vagueness." *Moyer*, 674 F.3d at 211. Specifically, "[b]ecause a defendant will be convicted for violating § 1519 'only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.'" *Id*. at 212 (quoting *Screws v. United States*, 325 U.S. 91, 102 (1945)). "Here, by the express language of [§ 1519], no liability will be imposed for knowingly falsifying documents *without* an 'intent to impede, obstruct, or influence a matter.'" *Id.*

---

[11] Indeed, several Circuits have held that no "nexus" (as that term is used in *Aguilar* and *Arthur Andersen*) is required *at all* under § 1519. *See Yielding*, 657 F.3d at 712 ("We conclude that the 'nexus' requirement urged by Yielding – that the government must show the accused knew his actions were likely to affect a federal matter – does not apply to a prosecution for the knowing falsification of documents under § 1519. The text of § 1519 requires only proof that the accused knowingly committed one of several acts, including falsification of a document, and did so 'with the intent to impede, obstruct, or influence the investigation or proper administration' of a federal matter."); *Gray*, 642 F.3d at 378 ("In view of the statute's plain language, which is fully consistent with the legislative history, we decline to read any such nexus requirement into the text of § 1519."); *Moyer*, 674 F.3d at 209 ("We conclude that proof of such a nexus is not required."). Nevertheless, cases speak in terms of "foreseeable" or "contemplated" proceedings. *See Yielding*, 657 F.3d at 811; *Moyer*, 674 F.3d at 210.

In rejecting a vagueness challenge to § 1519, *Yielding* reasoned that "the statute does not impose liability for 'knowingly . . . destroy[ing] . . . any . . . document . . . in . . . contemplation of any [federal] matter,' *without* an intent to impede, obstruct, or influence a matter.  If it did, then the statute would forbid innocent conduct such as routine destruction of documents that a person consciously and in good faith determines are irrelevant to a foreseeable federal matter."   657 F.3d at 711 (editorial marks in original). *Yielding* concluded: "[t]he plain language of the statute forbids the knowing falsification of a document with the intent to impede, obstruct, or influence the investigation or proper administration of a federal matter, even if that matter is not pending at the time of the obstructive act."  *Id.* at 715. *See also United States v. Kernell*, 667 F.3d 746, 753–56 (6th Cir. 2012) (rejecting vagueness challenge to § 1519); *United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008) (same).

Similarly, *Valenzuela Gallardo's* formulation – affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice, irrespective of the existence of an ongoing criminal investigation or proceeding – encompasses acts done with the purpose of impeding or obstructing justice. *See, e.g.*, *Rasheed*, 663 F.2d at 852.  That is, like § 1519's requirement to intend to influence "the investigation or proper administration of any [federal] matter," the BIA's formulation requires a specific intent to interfere with the process of justice "irrespective of the existence of an ongoing criminal investigation or proceeding."

**C. The majority Opinion's other criticisms do not help its vagueness analysis**

In discussing vagueness, the majority Opinion also faults the BIA for providing little instruction as to the requisite actus reus, with no indication of what conduct must be interfered with. But the BIA requires "*affirmative action* knowingly undertaken," 25 I. & N. Dec. at 840 (quoting *Espinoza-Gonzalez*, 22 I. & N. Dec. at 894) (emphasis added) – that is, an act – and *Espinoza-Gonzales* further defines the actus reus as "either active interference with proceedings of a tribunal or investigation, *or* action or threat of action against those who would cooperate in the process of justice." 22 I. & N. at 893 (emphasis added). As the Eighth Circuit reasons, the BIA has not eliminated an actus reus. *See Armenta-Lagunas*, 724 F.3d at 1024 ("To satisfy the actus reus element, the statute of conviction simply must require an active interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice.").

Applying the categorical approach, California Penal Code § 32 includes as elements specific instances of conduct that interfere with the process of justice ("harbors, conceals or aids a principal . . . with the intent that said principal may avoid or escape from arrest, trial, conviction, or punishment[.]"). Petitioner's California conviction was for a crime that necessarily requires "an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice, irrespective of the existence of an ongoing criminal investigation or proceeding."

And the majority Opinion's citation to *Johnson v. United States*, 135 S. Ct. 2551 (2015), does not support its

conclusion that the BIA's construction raises grave doubts as to vagueness. *Johnson* concluded that the Armed Career Criminal Act's ("ACCA") "residual clause," which defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . 'otherwise involves conduct that presents a serious potential risk of physical injury to another,'" 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. 135 S. Ct. at 2557. Unlike *Johnson*, for the reasons just stated, the BIA's formulation provides objective standards (it does not eliminate a required nexus, and adequately explains a connection to "the process of justice), and requires analyzing statutory definitions – not "judge-imagined abstraction[s]." *Johnson*, 135 S. Ct. at 2558. Moreover, *Johnson* declared the residual clause vague not only because of its indeterminancy, but because of a long history by the Supreme Court and other courts of "repeated attempts and repeated failures to craft a principled and objective standard out of" its language. *Id.* There was a "pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider" among lower courts. *Id.* at 2560. Nothing like that is involved with the BIA's formulation. *Johnson* addressed vagueness as to the specific language of the residual clause by applying settled principles[12] – it provides no support for questioning, on vagueness grounds, the BIA's construction of § 1101(a)(43)(S).

---

[12] *Johnson* concluded that the ACCA's residual clause is unconstitutional because of two flaws – uncertainty as to: 1) how to estimate the risk posed by a crime in an "ordinary case," and 2) how much risk is required for a crime to qualify. 135 S. Ct. at 2557–58. And the residual clause contains a list of exemplar crimes, causing further confusion. *Id.* at 2558. But the residual clause's flaws simply don't exist with the BIA's definition requiring a specific intent to interfere with the process of justice.

## V. If applicable, we should apply constitutional avoidance differently

Finally, even if the constitutional avoidance doctrine should be applied to the situation before us, we should apply it differently than how the majority Opinion does. When presented with grave doubts as to the constitutionality of a regulatory interpretation, courts should read the interpretation narrowly in a readily-apparent way to avoid the constitutional issue. *See, e.g.*, *Williams*, 115 F.3d at 666; *Stansell*, 847 F.2d at 615 ("Because a reasonable limiting construction can be placed on the challenged regulation, *we hold that [it] is not substantially overbroad*.") (emphasis added); *Meinhold v. United States Dep't of Defense*, 34 F.3d 1469, 1479 (9th Cir. 1994) ("[T]he regulation under which Meinhold was processed need not be construed so broadly as to raise constitutional concerns. It can reasonably be construed to reach only [constitutional grounds]."); *United States v. Bulacan*, 156 F.3d 963, 974 (9th Cir. 1998) (similar); *cf. Ma v. Ashcroft*, 257 F.3d 1095, 1106 (9th Cir. 2001) ("In the immigration context, courts have often read limitations into statutes that appeared to confer broad power on immigration officials in order to avoid constitutional problems."). Put differently, "our task is not to destroy the Act . . . but to construe it, if consistent with the will of Congress, so as to comport with constitutional limitations." *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 571 (1973).

In *Edward J. DeBartolo Corp.*, when faced with a National Labor Relations Board's ("NLRB") interpretation that presented serious First Amendment questions, neither the Eleventh Circuit nor the Supreme Court remanded the action to the NLRB to promulgate a different interpretation – the

Eleventh Circuit construed it "as not prohibiting consumer publicity." 485 U.S. at 574. *Edward J. DeBartolo Corp.* concluded, "as did the [Eleventh Circuit], that the section is open to a construction that obviates deciding whether a congressional prohibition of handbilling . . . would violate the First Amendment." *Id.* at 578.

Likewise, in *Williams*, the Ninth Circuit did not instruct the district court to remand the interpretation to the agency to allow it to reconsider its interpretation in a manner that did not violate equal protection, or come close to that line. Rather, given an agency interpretation that presented grave constitutional questions, *Williams* then "interpret[ed] the Reindeer Act as not precluding non-natives in Alaska from owning and importing reindeer." 115 F.3d at 666.

And so, even if *Valenzuela Gallardo* raises serious constitutional questions about vagueness, rather than remanding to the BIA, we can give the definition a limiting construction and construe it to include the necessary nexus where such a construction is readily apparent. And *Valenzuela Gallardo* can certainly be properly construed to fully encompass crimes "relating to obstruction of justice." The BIA meant to include crimes with an element of interfering with "the process of justice," such as preventing or impeding a principal's apprehension, trial, or punishment. *Valenzuela Gallardo*, 25 I. & N. Dec. at 841. Such a meaning is obvious from *Valenzuela Gallardo*, especially when read in conjunction with the BIA's en banc decisions in *Batista Hernandez* and *Espinoza-Gonzalez*, both of which *Valenzuela*

*Gallardo* explicitly referred to when "reaffirming" and "clarifying" them. *Id*. at 844. There is no reason to remand.[13]

For the foregoing reasons, I respectfully dissent.

---

[13] The majority Opinion states that the government's supplemental briefing requested a remand so that the BIA could consider an alternative definition. But the government's request was a fallback, apparently contingent on the panel deciding at *Chevron* step two that the BIA's definition is "unreasonable." *See* Resp't's Suppl. Mem. at 10 ("If the panel decides, however, the Board's definition is unreasonable this Court should remand for the Board to provide an alternative definition of the ambiguous phrase."). Although we certainly have the power to do so, it is inappropriate to remand to the BIA in this instance.